UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IDOLINA GAMBOA MADUENO, | No. 2:15-cv-0022 AC |
| Plaintiff, | |
| v. | **ORDER** |
| CAROLYN W. COLVIN, Acting Commissioner Of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-34.[1] For the reasons that follow, plaintiff's motion for summary judgment will be granted, and defendant's cross-motion for summary judgment will be denied.  The matter will be remanded to the Commissioner for further proceedings.

I. PROCEDURAL BACKGROUND

Plaintiff applied for DIB on April 18, 2011.  Administrative Record ("AR") 12

---

[1] DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability.  42 U.S.C. § 423(a)(1); Bowen v. City of New York, 476 U.S. 467, 470 (1986).

1

(Decision).[2]  The disability onset date was alleged to be February 11, 2010.  Id.  The application was disapproved initially and on reconsideration.  Id.  On June 19, 2013, ALJ John Heyer presided over the video hearing on plaintiff's challenge to the disapprovals.  AR 44-75 (transcript).  Plaintiff, who appeared with her counsel Kenton D. Koszdin, was present at the hearing.  Plaintiff testified through an interpreter, Ms. Pena.  Kathleen McAlpine, a vocational expert, also testified at the hearing.

On July 15, 2013, the ALJ found plaintiff "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d).  AR 9-25 (decision), 26-30 (exhibit list).  On November 19, 2014, after receiving a "Representative Correspondence" as an additional exhibit, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security.  AR 1-5 (decision and additional exhibit list).

Plaintiff filed this action on January 5, 2015.  ECF No. 1; see 42 U.S.C. § 405(g).  The parties consented to the jurisdiction of the magistrate judge.  ECF Nos. 7, 10.  The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed.  ECF Nos. 16 (plaintiff's summary judgment motion), 17 (Commissioner's summary judgment motion), 18 (plaintiff's reply).

## II.  FACTUAL BACKGROUND

Plaintiff was born on September 23, 1971, and accordingly was, at age 38, a "younger" person under the regulations, when she filed her application.[3]  AR 23.  Plaintiff has at least a high school education, and can communicate in English.[4]  AR 23.

## III.  LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards."

---

[2] The AR is electronically filed, in two parts, at ECF Nos. 12-3 to 13-11 (AR 1 to AR 1,302). The paper version is filed with the Clerk of the Court.  ECF No. 12.
[3] See 20 C.F.R. § 404.1563(c) ("Younger person").
[4] Plaintiff does not challenge the ALJ's finding that she can "communicate in English." However, the basis for her appeal is that she does not possess "literacy" in English, that is, she cannot *read and write* in English, a distinction that is discussed below.

Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted). Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. SSA, 466 F.3d 880, 885 (9th Cir. 2006)

////

(quoting Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## IV.  RELEVANT LAW

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled." 42 U.S.C. §§ 402(d)(1)(B)(ii) (DIB), 1381a (SSI).  Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . ..'" Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI).  The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

20 C.F.R. § 404.1520(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, the claimant is not disabled.

Id. §§ 404.1520(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is disabled.  If not, proceed to step four.

Id. §§ 404.1520(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

Id. §§ 404.1520(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Id. §§ 404.1520(a)(4)(v), (g).

4

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V.  THE ALJ's DECISION

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2015.
>
> 2. [Step 1] The claimant has not engaged in substantial gainful activity since February 11, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. [Step 2] The claimant has the following severe impairments: left shoulder impingement syndrome, status post arthroscopic subacromial decompression with adhesive capsulitis; small cervical spine disc bulges; obesity; anxiety; and depression (20 CFR 404.1520(c)).
>
> 4. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. [Preparation for Step 4] After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) with the following modifications: can complete an eight hour day, if given the option to alternate between sitting and standing, as needed, in up to 30 minute increments; and who is limited to simple repetitive tasks due to depression.
>
> 6. [Step 4] The claimant is unable to perform any past relevant work (20 CFR 404.1565).
>
> 7. [Step 5] The claimant was born on September 23,1971 and was 38 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).
>
> 8. [Step 5, continued] The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).
>
> 9. [Step 5, continued] Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

      10. [Step 5, continued] The vocational expert testified that considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

      11. The claimant has not been under a disability, as defined in the Social Security Act, from February 11, 2010, through the date of this decision (20 CFR 404.1520(g)).

AR 14-25.

As noted, the ALJ concluded that plaintiff was "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d). AR 25.

## VI. ANALYSIS

Plaintiff alleges that the ALJ erred by failing to "assess the impact of literacy on the identified jobs at Step 5."[5] Plaintiff requests that the matter be remanded to the Commissioner for proper consideration of this matter.

On appeal, plaintiff does not challenge the ALJ's finding that she "can communicate in English." See AR 23 ¶ 8 ("claimant . . . is able to communicate in English"). She does argue that this finding is not enough to support the Step 5 determination of the availability of jobs, because that depends not only on plaintiff's ability to *communicate* in English, but also upon her English *literacy*, that is, her ability to read and write in English: "A distinction exists between an assessment of literacy and an assessment of the ability to communicate in English, and an ALJ must consider both in determining whether a claimant can perform work pursuant to the regulations." ECF No. 16 at 6. For the reasons that follow, the court agrees, and will remand this matter for further proceedings.

### A. English Language Ability

As noted above, the ALJ found, at Steps 1 to 4, that plaintiff (1) had not engaged in substantial gainful activity since the alleged disability onset date, (2, 3) had severe impairments, although the severity of the impairments were insufficient to meet or equal the Listing of

---

[5] Plaintiff also argues that the ALJ erred by failing "to properly consider probative medical source opinions." ECF No. 16 at 7-9. However, the requested remedy is a remand, which is the remedy the court will order in consequence of plaintiff's first argument. Accordingly, this second issue need not be addressed at this time.

6

1  Impairments ("Listings"), 20 C.F.R. Part 404, Subpt. P, App. 1, and (4) could not perform past

2  relevant work.  At Step 5, the burden shifts to the Commissioner "'to identify specific jobs

3  existing in substantial numbers in the national economy that [a] claimant can perform despite

4  [his] identified limitations.'"  Zavalin v. Colvin, 778 F.3d 842, 845 (9th Cir. 2015) (quoting

5  Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir.1995)).  Under the applicable regulations,

6  "[w]ork exists in the national economy when there is a significant number of jobs (in one or more

7  occupations) having requirements which you are able to meet with your physical or mental

8  abilities and vocational qualifications."  20 C.F.R. § 404.1566(b).  To satisfy her burden, then, the

9  Commissioner must, at a minimum, identify jobs whose requirements plaintiff can meet with her

10  physical and mental abilities.

11  To meet her burden, the Commissioner takes "administrative notice" of "reliable job

12  information available from various governmental and other publications," including the

13  "Dictionary of Occupational Titles, published by the Department of Labor."  20 C.F.R.

14  § 404.1566(d)(1); SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000) ("[i]n making disability

15  determinations, we rely primarily on the DOT . . . for information about the requirements of work

16  in the national economy").[6]  "The DOT describes the requirements for each listed occupation,

17  including the necessary General Educational Development ("GED") levels; that is, 'aspects of

18  education . . . required of the worker for satisfactory job performance."'  Zavalin, 778 F.3d at 846

19  (quoting DOT, App. C, 1991 WL 688702(4th ed.1991)).  In turn, the GED levels include the

---

[6] The court notes that the Department of Labor, which is the publisher of the DOT, states that the DOT "was last updated in 1991," and that it "has been replaced by the O*NET [Occupational Information Network]."  See http://www.oalj.dol.gov/libdot.htm (last visited by the court on March 26, 2016); see also, Dundon v. Colvin, 2016 WL 825156 at *3 n.3, 2016 U.S. Dist. LEXIS 26270 at 8 n.3 (W.D. Wash.) ("[t]he DOT's obsolescence is widely recognized") (and collecting cases), report and recommendation adopted, 2016 WL 807783, 2016 U.S. Dist. LEXIS 26256 (2016); Ricard v. Astrue, 2009 WL 5031317 at *9 (adopting and reprinting magistrate judge opinion) [2009 U.S. Dist. LEXIS 116109 (district judge opinion only)] (M.D. Tenn. 2009) ("[a]lthough considered obsolete by most other federal agencies, the DOT continues to be used extensively by the Social Security Administration").  Nevertheless, the Dictionary is an accepted basis for vocational opinion according to the Commissioner's rules, and recent Ninth Circuit authority.  See, e.g., Zavalin, 778 F.3d at 845-46 (the DOT "is the SSA's 'primary source of reliable job information' regarding jobs that exist in the national economy") (quoting Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir.1990)).

language ability needed to perform the job, ranging from Level 1 (which requires the least language ability) to Level 6 (which requires the most).[7]  See DOT, App. C, § III, 1991 WL 688702 (4th ed.1991).

"In addition to the DOT, the ALJ relies on the testimony of vocational experts who testify about specific occupations that a claimant can perform in light of his residual functional capacity."  Zavalin, 778 F.3d at 846; see also 20 C.F.R. § 404.1566(e) ("Use of vocational experts").  "Finally, to conclude the Step Five analysis, the ALJ determines 'whether, given the claimant's [residual functional capacity], age, education, and work experience, he actually can find some work in the national economy.'"  Zavalin, 778 F.3d at 846 (quoting (citing Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009)).

Here, the ALJ relied upon the testimony of a vocational expert ("VE"), Kathleen McAlpine.  The VE proposed the following two jobs: "assembler (DOT 725.684-018);"[8] and "parking lot cashier (DOT 211.462-010)."  AR 24.  Relying on that testimony, the ALJ found that considering plaintiff's RFC, age, education and work experience, plaintiff could perform work that exists in significant numbers in the national economy, namely, those two jobs.  AR 25.

However, in proposing those jobs, the VE only considered two of the three DOT requirements needed to do the jobs, namely, the strength requirement (sedentary), and the SVP (SVP 2).  AR 70-71.  The VE did not consider the language requirement (a part of the general

---

[7] The GED also describes the required strength levels of the job ("sedentary," "light," "medium," "heavy," and "very heavy"), and SVP ("specific vocational preparation") requirements.  SVP "refers to the 'specific vocational preparation' level which is defined in the DOT as 'the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.'  Dictionary of Occupational Titles, Appendix C, page 1009 (4th ed.1991)."  Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1230 (9th Cir. 2009).

[8] The court notes that "DOT 725.684-018" is the entry for "Stem Mounter," a person who "[f]astens tungsten wire (filament) to glass stem to form mount for electric light bulb . . . ."  It is unknown whether the discrepancy makes any difference to this case.  The VE does not state the language level requirement for "assembler," so the court has no way to know if it is the same as for Stem Mounter.  The court notes that there are two DOT entries for "assembler," more for specific types of "assembler," and that some have higher language level requirements than Stem Mounter, while some have the same.  See, e.g., DOT 723.684-014 Assembler I, 1991 WL 679520 (language level 2); DOT 723.684-018 Assembler II, 1991 WL 679521 (language level 2); DOT 692.685-118 Light Bulb Assembler, 1991 WL 678737 ((language level 1).

educational development requirement). Nor did the ALJ include the language requirement in the hypotheticals he posed to the VE.

These were critical omissions, because according to the DOT, the proposed job of "parking lot cashier (DOT 211.462-010)" requires a language level of 2:

> READING: Passive vocabulary of 5,000-6,000 words. Read at rate of 190-215 words per minute. Read adventure stories and comic books, looking up unfamiliar words in dictionary for meaning, spelling, and pronunciation. Read instructions for assembling model cars and airplanes.
>
> WRITING: Write compound and complex sentences, using cursive style, proper end punctuation, and employing adjectives and adverbs.
>
> SPEAKING: Speak clearly and distinctly with appropriate pauses and emphasis, correct punctuation, variations in word order, using present, perfect, and future tenses.

DOT 211.462-010 CASHIER II, 1991 WL 671840. In addition, the proposed job of "assembler (DOT 725.684-018)" requires a language level of 1. Although this is the lowest level, it still requires some English language abilities:

> READING: Recognize meaning of 2,500 (two- or three-syllable) words. Read at rate of 95-120 words per minute. Compare similarities and differences between words and between series of numbers.
>
> WRITING: Print simple sentences containing subject, verb, and object, and series of numbers, names, and addresses.
>
> SPEAKING: Speak simple sentences, using normal word order, and present and past tenses.

DOT 725.684-018 STEM MOUNTER, 1991 WL 679557.

Thus, the VE was proposing two jobs that had language level requirements that were apparently beyond plaintiff's capabilities. Plaintiff's possible deficiencies in English language skills was clear, and indeed it appears that the ALJ understood that plaintiff's English language abilities were compromised, at least to some degree. First, plaintiff testified at the hearing through an interpreter. Second, when the ALJ asked plaintiff if she could "understand English at all," she replied, through the interpreter, "No. A little bit." AR 47. Third, when the ALJ challenged plaintiff on her alleged inability to understand English, she replied, through the

9

1   translator, "I did tell you a little bit. Just a little bit." AR 50.

2   Finally, although the ALJ seemed disbelieving of plaintiff's inability to *understand*
3   English, the only English words plaintiff actually *spoke* at the hearing were "Yeah.
4   Manipulation," repeating the word just used by her attorney, and "No, ten," correcting her
5   attorney's assertion that she had surgery in 2012. AR 54, 55. Even if the ALJ's suspicions about
6   plaintiff's *understanding* were correct, these four spoken words are no indication that plaintiff can
7   *speak* "simple sentences, using normal word order, and present and past tenses," as required by
8   Language Level 1, or the more complex language skills of Language Level 2.

9   Given the apparent conflict between plaintiff's abilities and the requirements of the jobs
10  proposed by the VE, "the ALJ is required to reconcile the inconsistency." Zavalin, 778 F.3d
11  at 846. To do this, the ALJ was required to "ask the expert to explain the conflict and 'then
12  determine whether the vocational expert's explanation for the conflict is reasonable' before
13  relying on the expert's testimony to reach a disability determination." Id. (quoting Massachi, 486
14  F.3d at 1153-54).[9] The ALJ did not do so.[10] The ALJ's failure to resolve this apparent conflict
15  leaves the court "with a gap in the record that precludes us from determining whether the ALJ's
16  decision is supported by substantial evidence." Zavalin, 778 F.3d at 846.

17  The court notes that plaintiff focuses her argument on the regulations' definition of
18  "illiteracy" as contrasted with the ALJ's finding that plaintiff "can communicate in English."
19  Plaintiff is correct that those are two different things. Even if a person "can communicate in
20  English," they can still be "illiterate" under the regulations. See 20 C.F.R. § 404.1564(b)(1)
21  ("[i]lliteracy means the inability to *read or write*") (emphasis added); Chavez v. Department of
22  Health and Human Services, 103 F.3d 849, 852 (9th Cir. 1996) ("illiterate" means "illiterate in
23  English"). However, the impact of meeting this regulatory definition of "illiteracy" is not clear in

24

---

25  [9] On appeal, the Commissioner claims that plaintiff met the DOT language requirements.
    However, there is no indication that the ALJ reached this conclusion. The ALJ did find that
26  plaintiff "can communicate in English." However, as discussed herein, this is not a finding that
    plaintiff can *read and write* (has "literacy") in English.
27  [10] The court is aware that the ALJ did ask the VE about a conflict regarding the "sit-stand"
    option. See AR 69-71.
28

this case. According to the regulations, "the functional capability for a full range of sedentary work represents sufficient numbers of jobs to indicate substantial vocational scope for those individuals age 18-44 *even if they are illiterate* or unable to communicate in English." 20 C.F.R. Pt. 404, Subpt. P, App. 2, ¶ 201.00(i) (emphasis added). Accordingly, the pertinent inquiry is whether the plaintiff can do the job given the DOT language requirements, not whether plaintiff meets the definition of "illiterate" under the regulations. Plaintiff's alleged illiteracy would be a different matter if she were older:

> [For individuals 45–49 years old] (1) who are restricted to sedentary work, (2) who are unskilled or have no transferable skills, (3) who have no relevant past work or who can no longer perform vocationally relevant past work, and (4) who are either illiterate or unable to communicate in the English language, *a finding of disabled is warranted*. 20 C.F.R. pt. 404, subpt. P, app. 2 § 201.00(h) (emphasis added).

Silveira v. Apfel, 204 F.3d 1257, 1261 (9th Cir. 2000) (per curiam).

### B. Substantial Evidence

The Commissioner argues that "[t]here is evidence throughout the record that Plaintiff could speak at least basic English, had finished high school, and has worked in numerous jobs in the U.S. that had similar language requirements as the representative occupations identified by the ALJ." ECF No. 17 at 7. The short answer is that the ALJ did not consider any of the proffered "evidence," and further, there is no evidence that the ALJ ever considered plaintiff's ability to read, write and speak in English. This court reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Orn V. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

Apart from asking this court to affirm on grounds never considered by the ALJ, the Commissioner asks the court to consider VE testimony that the VE never gave. The Commissioner argues that because the VE testified that plaintiff's past relevant work as "packer," "fruit sorter" and "farm laborer," all required Language Level 1, "it follows that she is able to perform at that level." ECF No. 17 at 7. But it does not follow. "The fallacy of this contention is that the Commissioner is unable to cite any evidence in the record that plaintiff actually

performed any of her past relevant work with the language level described by the DOT." Rodriguez v. Astrue, 2013 WL 458176 at *3, 2013 U.S. Dist. LEXIS 16200 at *7 (C.D. Cal. 2013) (rejecting the same argument the Commissioner makes here).  Indeed, the ALJ never asked whether plaintiff had used any English in performing her past work, plaintiff never testified that she did so,[11] and the VE never suggested that she did so, or must have done so.  Moreover, there is nothing about plaintiff's past jobs that creates any kind of presumption that she must have used English to do them.[12]  On remand, the ALJ is of course free to consider the other evidence the Commissioner thinks is relevant to this issue.

## VII.  CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 16), is GRANTED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 17), is DENIED;

3. This matter is REMANDED to the Commissioner for further proceedings consistent with this opinion; and

---

[11] The Commissioner creates a whole world of sophisticated office work out of the plaintiff's utterance – through the interpreter – of one word, "quality."  When asked at the hearing about her prior jobs, plaintiff testified that she worked "[i]n the field."  AR 48.  Asked for details of what she did "*in the field*," plaintiff replied – through her interpreter – "All types of jobs, like picking, packing. I was also quality."  AR 48.  Apparently relying upon this single word – "quality" – the Commissioner on appeal spins an extravagantly unlikely scenario that has plaintiff working at "Target" (a store not mentioned in the testimony), where she engaged in "reading and writing," and where her job duties included "writing and completing reports."  ECF No. 17 at 8 & n.3.  If this unlikely story is not derived from this one word, then it is spun out of whole cloth, since the Commissioner's citation in support of the story – "AR 178" – contains no reference at all to Target, reading, writing or report-writing.  It refers to plaintiff's job of scanning the labels on boxes, packing merchandise into boxes, taping up boxes, lifting up boxes, and pushing boxes onto a conveyor.  AR 178.  If the Commissioner's citation was a scrivener's error for "AR 78" (the citation she used later on the same page), that document also gives no indication of the high-level, white-collar job the Commissioner imagines the plaintiff performed.  See AR 78 (past relevant work was "Packer," "Fruit Sorter," and "Farm Laborer").  In fact, neither the Commissioner nor this court know what plaintiff meant when she said that she was "quality" while working "in the field."  The ALJ is free to explore the matter on remand.

[12] See Mendoza v. Colvin, 2015 WL 1320093 at *10, 2015 U.S. Dist. LEXIS 37180 at *29 (E.D. Cal. 2015) (Oberto, M.J.) (plaintiff had past work doing "field labor" despite not being able to speak in English); De Rivera v. Astrue, 2010 WL 4916241 at *2, 2010 U.S. Dist. LEXIS 124873 at 6 (C.D. Cal. 2010) ("[p]laintiff testified that she was able to perform her past job[] as . . . housekeeper, as actually performed, *despite her inability to speak English*") (emphasis added).  Plaintiff also worked for *one month* cooking hamburgers at McDonald's.  AR 49.  The ALJ specifically declined to consider this job in his decisionmaking (AR 68-69).

4. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

DATED: March 28, 2016

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE